Case 1:25-cv-00035-DKW-KJM   Document 1   Filed 01/24/25   Page 1 of 4   PageID.1

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
Jan 24, 2025 7:06 PM
Lucy H.Carrillo, Clerk of Court

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF HAWAII

TAMLYN HUNT, ) ) Plaintiff, ) Civil No. __25-00035 SASP-KJM__ Pro Se, ) ) COMPLAINT FOR DECLARATORY vs. ) AND INJUNCTIVE RELIEF ) FEDERAL EMERGENCY MANAGEMENT ) (Federal Question Jurisdiction: AGENCY; DEANNE CRISWELL, in her ) National Environmental Policy official capacity as FEMA ) Act, Clean Water Act, Administrator; DEPARTMENT OF ) Administrative Procedure Act) LAND AND NATURAL RESOURCES, ) STATE OF HAWAII; DAWN CHANG, ) in her official capacity as ) Chairperson of the Board of ) Land and Natural Resources, ) ) Defendants. )
_____ )

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Tamlyn Hunt alleges as follows:

INTRODUCTION

1. This action challenges the Federal Emergency Management Agency's (FEMA) approval and funding of a project that would unnecessarily destroy unique thermal ponds that formed naturally following the 2018 Kilauea volcanic eruption in Hawaii County.
2. While Plaintiff supports the restoration of the Pohoiki Boat Ramp, the current plan unnecessarily calls for filling several thermal ponds with dredged material, despite the availability of alternative disposal locations.
3. FEMA's approval of this project violates the National Environmental Policy Act (NEPA), Executive Order 11990 (Protection of Wetlands), Executive Order 12898 (Environmental Justice), the Clean Water Act, and the Administrative Procedure Act.

JURISDICTION AND VENUE

4. This Court has jurisdiction under 28 U.S.C. § 1331 (federal question), 5 U.S.C. §§ 701-706 (Administrative Procedure Act), and 28 U.S.C. § 1361 (mandamus).
5. Venue is proper in this district under 28 U.S.C. § 1391(e) because a substantial part of the events giving rise to the claims occurred in this district and the affected property is located in this district.

PARTIES

6. Plaintiff Tamlyn Hunt is a resident of Hawaii County who regularly uses and enjoys the Pohoiki thermal ponds for recreation and cultural purposes. Plaintiff will be directly and irreparably harmed by the destruction of these ponds.
7. Defendant FEMA is a federal agency responsible for the approval and funding of the Pohoiki Boat Ramp project.
8. Defendant Deanne Criswell is sued in her official capacity as Administrator of FEMA.
9. Defendant Department of Land and Natural Resources (DLNR) is a Hawaii state agency responsible for implementing the project.

10. Defendant Dawn Chang is sued in her official capacity as Chairperson of the Board of Land and Natural Resources.

FACTUAL BACKGROUND

The Pohoiki Thermal Ponds

11. The 2018 Kilauea volcanic eruption dramatically transformed the Pohoiki area of Hawaii County's Puna District, creating several naturally formed thermal ponds through the interaction of volcanic activity and ocean water.
12. These thermal ponds are a unique geological and recreational resource, maintaining consistent warm temperatures through geothermal activity and tidal influence.
13. The ponds are freely accessible to the public and have become vital recreational and cultural resources, particularly for residents of the Puna District, which has the lowest median household income of any district in Hawaii.
14. The ponds effectively replaced other beloved hot ponds that were destroyed by the same 2018 lava flow, making them particularly valuable to the local community.
15. The ponds are tidally influenced and meet the definition of wetlands under federal law, as acknowledged in FEMA's Final Public Notice dated December 4, 2024.

The Proposed Project

16. On December 4, 2024, FEMA issued a Final Public Notice regarding its intent to fund the Pohoiki Boat Ramp dredging project under the Public Assistance Grant Program.
17. The project involves removing approximately 42,000 cubic yards of volcanic material that currently blocks access to the boat ramp.
18. The project plan calls for using a portion of this dredged material to fill the thermal ponds in the "backshore area," despite the availability of alternative disposal locations.
19. Work is scheduled to begin in February 2025, before full consideration of public comments and environmental review requirements.
20. On December 12, 2024, Plaintiff submitted detailed comments to FEMA opposing the filling of the thermal ponds and requesting consideration of alternatives.

FEMA's Environmental Review

21. FEMA acknowledges in its Final Public Notice that the project "will take place in wetlands per the United States Fish and Wildlife Service National Wetlands Inventory and will affect wetland values."
22. FEMA's alternatives analysis considered only three options: (1) No Action, (2) Repair in-kind or Repair with Minimization, and (3) Relocation.
23. None of these alternatives addressed alternative disposal sites for the dredged material that would preserve the thermal ponds while still achieving project goals.
24. FEMA failed to analyze the environmental justice implications of destroying these freely accessible recreational resources in Hawaii's lowest-income district.

LEGAL FRAMEWORK

### The National Environmental Policy Act

25. NEPA requires federal agencies to take a "hard look" at the environmental consequences of their actions and to evaluate all reasonable alternatives.
26. NEPA regulations require agencies to consider both direct and indirect effects of their actions, including impacts on minority and low-income populations.
27. NEPA requires agencies to analyze alternatives that would avoid or minimize adverse environmental impacts.

### Executive Orders

28. Executive Order 11990 requires federal agencies to avoid the destruction or modification of wetlands wherever there is a practicable alternative.
29. Executive Order 12898 requires federal agencies to identify and address disproportionately high and adverse environmental effects of their actions on minority and low-income populations.

### Clean Water Act

30. Section 404 of the Clean Water Act requires permits for the discharge of dredged or fill material into waters of the United States, including wetlands.
31. The Act's implementing regulations prohibit discharge of dredged or fill material if there is a practicable alternative that would have less adverse impact on the aquatic ecosystem.

### CLAIMS FOR RELIEF

#### First Claim for Relief (Violation of NEPA and APA)

32. Plaintiff realleges and incorporates by reference all preceding paragraphs.
33. FEMA's environmental review violates NEPA and its implementing regulations by: a. Failing to take a "hard look" at the environmental consequences of filling the thermal ponds; b. Failing to analyze reasonable alternatives for disposal of dredged material; c. Failing to adequately assess impacts on minority and low-income populations; d. Failing to provide adequate opportunity for public review and comment.
34. These failures are arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law under the APA.

#### Second Claim for Relief (Violation of Executive Order 11990 and APA)

35. Plaintiff realleges and incorporates by reference all preceding paragraphs.
36. FEMA violated Executive Order 11990 by: a. Failing to avoid wetlands destruction where practicable alternatives exist; b. Failing to adequately evaluate alternatives that would preserve wetlands; c. Failing to demonstrate no practicable alternative to wetlands destruction exists.
37. These violations are arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law under the APA.

Third Claim for Relief (Violation of Executive Order 12898 and APA)

38. Plaintiff realleges and incorporates by reference all preceding paragraphs.
39. FEMA violated Executive Order 12898 by: a. Failing to analyze disproportionate impacts on low-income populations in Puna; b. Failing to consider the loss of free recreational resources in an economically disadvantaged area; c. Failing to identify and address adverse effects on minority and low-income populations.
40. These violations are arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law under the APA.

Fourth Claim for Relief (Violation of Clean Water Act and APA)

41. Plaintiff realleges and incorporates by reference all preceding paragraphs.
42. The filling of tidally influenced ponds requires permits under Section 404 of the Clean Water Act.
43. FEMA has failed to demonstrate compliance with Clean Water Act requirements for the discharge of dredged material into wetlands.
44. These violations are arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law under the APA.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

45. Declare that FEMA's approval of the project violates NEPA, Executive Orders 11990 and 12898, the Clean Water Act, and the APA;
46. Vacate and set aside FEMA's approval;
47. Enjoin defendants from implementing the project until they comply with all applicable laws;
48. Award Plaintiff costs and reasonable attorneys' fees; and
49. Grant such other relief as the Court deems just and proper.

Dated: January 24, 2025

Respectfully submitted,

TAMLYN HUNT Plaintiff Pro Se

PO Box 4626 Hilo HI 96720

805 705 1352

Tam.hunt@gmail.com