Case 1:25-cv-00035-DKW-KJM   Document 24   Filed 03/30/25   Page 1 of 8   PageID.54

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
Mar 30, 2025 9:05 PM
Lucy H.Carrillo, Clerk of Court

UNITED STATES DISTRICT COURT
for the
District of Hawaii

Tamlyn Hunt

*Plaintiff(s)*

v.

FEMA and DLNR

*Defendant(s)*

Civil Action No. 25-00035 DKW-KJM

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Tamlyn Hunt alleges as follows:

INTRODUCTION

1. This action challenges the Federal Emergency Management Agency's (FEMA) approval and funding of a project that would unnecessarily destroy unique thermal ponds that formed naturally following the 2018 Kilauea volcanic eruption in Hawaii County.

2. While Plaintiff supports the restoration of the Pohoiki Boat Ramp, the current plan unnecessarily calls for filling several thermal ponds with dredged material, despite the availability of alternative disposal locations.

3. FEMA's approval of this project violates the National Environmental Policy Act (NEPA), Executive Order 11990 (Protection of Wetlands), Executive Order 12898 (Environmental Justice), the Clean Water Act, and the Administrative Procedure Act.

JURISDICTION AND VENUE

4. This Court has jurisdiction under 28 U.S.C. § 1331 (federal question), 5 U.S.C. §§ 701-706 (Administrative Procedure Act), and 28 U.S.C. § 1361 (mandamus).

5. Venue is proper in this district under 28 U.S.C. § 1391(e) because a substantial part of the events giving rise to the claims occurred in this district and the affected property is located in this district.

PARTIES

6. Plaintiff Tamlyn Hunt is a resident of Hawaii County who regularly uses and enjoys the Pohoiki thermal ponds for recreation and cultural purposes. Plaintiff will be directly and irreparably harmed by the destruction of these ponds.
7. Defendant FEMA is a federal agency responsible for the approval and funding of the Pohoiki Boat Ramp project.
8. Defendant Deanne Criswell is sued in her official capacity as Administrator of FEMA.
9. Defendant Department of Land and Natural Resources (DLNR) is a Hawaii state agency responsible for implementing the project.
10. Defendant Dawn Chang is sued in her official capacity as Chairperson of the Board of Land and Natural Resources.

FACTUAL BACKGROUND

The Pohoiki Thermal Ponds

11. The 2018 Kilauea volcanic eruption dramatically transformed the Pohoiki area of Hawaii County's Puna District, creating several naturally formed thermal ponds through the interaction of volcanic activity and ocean water.
12. These thermal ponds are a unique geological and recreational resource, maintaining consistent warm temperatures through geothermal activity and tidal influence.
13. The ponds are freely accessible to the public and have become vital recreational and cultural resources, particularly for residents of the Puna District, which has the lowest median household income of any district in Hawaii.
14. The ponds effectively replaced other beloved hot ponds that were destroyed by the same 2018 lava flow, making them particularly valuable to the local community.
15. The ponds are tidally influenced and meet the definition of wetlands under federal law, as acknowledged in FEMA's Final Public Notice dated December 4, 2024.

The Proposed Project

16. On December 4, 2024, FEMA issued a Final Public Notice regarding its intent to fund the Pohoiki Boat Ramp dredging project under the Public Assistance Grant Program.
17. The project involves removing approximately 42,000 cubic yards of volcanic material that currently blocks access to the boat ramp.
18. The project plan calls for using a portion of this dredged material to fill the thermal ponds in the "backshore area," despite the availability of alternative disposal locations.
19. Work is scheduled to begin in February 2025, before full consideration of public comments and environmental review requirements.
20. On December 12, 2024, Plaintiff submitted detailed comments to FEMA opposing the filling of the thermal ponds and requesting consideration of alternatives.

FEMA's Environmental Review

21. FEMA acknowledges in its Final Public Notice that the project "will take place in wetlands per the United States Fish and Wildlife Service National Wetlands Inventory and will affect wetland values."
22. FEMA's alternatives analysis considered only three options: (1) No Action, (2) Repair in-kind or Repair with Minimization, and (3) Relocation.
23. None of these alternatives addressed alternative disposal sites for the dredged material that would preserve the thermal ponds while still achieving project goals.
24. FEMA failed to analyze the environmental justice implications of destroying these freely accessible recreational resources in Hawaii's lowest-income district.

Plaintiff's Lawsuit and DLNR's Change in Project Scope

25. On January 24, 2025, Plaintiff filed this lawsuit challenging FEMA's approval and funding of the project.
26. Within weeks of Plaintiff filing this lawsuit, the Hawaii Department of Land and Natural Resources (DLNR) made a significant change to the Pohoiki Boat Ramp project that directly addresses the central concern of Plaintiff's complaint.

27. Specifically, DLNR issued an official Status Report for the project dated February 13, 2025 (attached as Exhibit A to this Amended Complaint), which states in bold, capitalized text: "FILLING OF 'HOT POND' NEXT TO BOAT RAMP HAS BEEN REMOVED FROM THE PROJECT SCOPE OF WORK." This Status Report, signed by DLNR Chairperson Dawn Chang, represents the first acknowledgment by Defendants that the project scope has been modified in response to concerns about the thermal ponds.

28. This change was directly caused by Plaintiff's lawsuit. In a message dated February 10, 2025, in a community discussion group called "Pohoiki Hot Ponds Preservation Alliance," a community member with direct knowledge of the project (Smiley Burrows) stated: "The ponds will not be covered, the dredging is moving forward and the lawsuit has pushed Dobor [Division of Boating and Ocean Recreation] to make the decision to eliminate the filling in of any ponds."

29. This same community member later clarified in another message: "Not sure if/when this is announced, but Finn shared with our group that they will not be putting any materials in any ponds due to the lawsuit and will proceed to put the materials where they planned to the North of the park."

30. These statements confirm that Plaintiff's lawsuit was the catalyst that caused DLNR to remove the filling of the thermal ponds from the project scope.

31. Despite DLNR's Status Report indicating this significant change, Defendants have not provided Plaintiff with any formal communication, revised plans, or other legally binding assurances that this change is permanent or that the project plans will not revert to the original scope in the future. The change appears to be a unilateral administrative action that could be reversed at any time without public notice or opportunity for comment.

32. Neither FEMA nor DLNR has contacted Plaintiff to discuss settlement or resolution of this action, and no binding commitments or enforceable documents have been provided to ensure the permanent protection of the thermal ponds. Without a court order, consent decree, or other judicially enforceable document, the thermal ponds remain vulnerable to future destruction through administrative action alone.

33. The single Status Report represents merely an internal administrative notation rather than a formal, binding commitment subject to judicial enforcement, leaving the thermal ponds vulnerable to potential future decisions to resume the original plan to fill them. Courts have consistently recognized that a defendant's voluntary cessation of challenged conduct does not moot a case unless it is "absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 189 (2000). No such certainty exists here.

LEGAL FRAMEWORK

The National Environmental Policy Act

34. NEPA requires federal agencies to take a "hard look" at the environmental consequences of their actions and to evaluate all reasonable alternatives.
35. NEPA regulations require agencies to consider both direct and indirect effects of their actions, including impacts on minority and low-income populations.
36. NEPA requires agencies to analyze alternatives that would avoid or minimize adverse environmental impacts.

Executive Orders

37. Executive Order 11990 requires federal agencies to avoid the destruction or modification of wetlands wherever there is a practicable alternative.
38. Executive Order 12898 requires federal agencies to identify and address disproportionately high and adverse environmental effects of their actions on minority and low-income populations.

Clean Water Act

39. Section 404 of the Clean Water Act requires permits for the discharge of dredged or fill material into waters of the United States, including wetlands.
40. The Act's implementing regulations prohibit discharge of dredged or fill material if there is a practicable alternative that would have less adverse impact on the aquatic ecosystem.

CLAIMS FOR RELIEF

First Claim for Relief (Violation of NEPA and APA)

41. Plaintiff realleges and incorporates by reference all preceding paragraphs.
42. FEMA's environmental review violates NEPA and its implementing regulations by: a. Failing to take a "hard look" at the environmental consequences of filling the thermal ponds; b. Failing to analyze reasonable alternatives for disposal of dredged material; c. Failing to adequately assess impacts on minority and low-income populations; d. Failing to provide adequate opportunity for public review and comment.
43. These failures are arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law under the APA.

Second Claim for Relief (Violation of Executive Order 11990 and APA)

44. Plaintiff realleges and incorporates by reference all preceding paragraphs.
45. FEMA violated Executive Order 11990 by: a. Failing to avoid wetlands destruction where practicable alternatives exist; b. Failing to adequately evaluate alternatives that would preserve wetlands; c. Failing to demonstrate no practicable alternative to wetlands destruction exists.
46. These violations are arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law under the APA.

Third Claim for Relief (Violation of Executive Order 12898 and APA)

47. Plaintiff realleges and incorporates by reference all preceding paragraphs.
48. FEMA violated Executive Order 12898 by: a. Failing to analyze disproportionate impacts on low-income populations in Puna; b. Failing to consider the loss of free recreational resources in an economically disadvantaged area; c. Failing to identify and address adverse effects on minority and low-income populations.
49. These violations are arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law under the APA.

Fourth Claim for Relief (Violation of Clean Water Act and APA)

50. Plaintiff realleges and incorporates by reference all preceding paragraphs.

51. The filling of tidally influenced ponds requires permits under Section 404 of the Clean Water Act.

52. FEMA has failed to demonstrate compliance with Clean Water Act requirements for the discharge of dredged material into wetlands.

53. These violations are arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law under the APA.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

54. Declare that FEMA's approval of the project violates NEPA, Executive Orders 11990 and 12898, the Clean Water Act, and the APA;

55. Vacate and set aside FEMA's approval;

56. Enjoin defendants from implementing the project until they comply with all applicable laws;

57. Order Defendants to provide formal, binding assurances that the thermal ponds will be permanently protected from filling or other adverse impacts during the Pohoiki Boat Ramp restoration project;

58. Award Plaintiff reasonable attorney's fees and costs pursuant to the Clean Water Act's citizen suit provision, 33 U.S.C. § 1365(d), and other applicable fee-shifting statutes including but not limited to the Equal Access to Justice Act, 28 U.S.C. § 2412;

59. Grant such other relief as the Court deems just and proper.

Dated: March 30, 2025

Respectfully submitted,


TAMLYN HUNT

1   _____

2   Plaintiff Pro Se

3   PO Box 4626

4   Hilo, HI 96720

5   805-705-1352

6   [Tam.hunt@gmail.com](mailto:Tam.hunt@gmail.com)

7